IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RICKEY L. McGEE, #2173658 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv200 |
| | | CONSOLIDATED WITH 6:21cv222 |
| WARDEN THOMPSON, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Rickey L. McGee, a prisoner currently confined at the Hughes Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed these civil-rights proceedings pursuant to 42 U.S.C. § 1983. Both cases were referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the proceedings. For the reasons explained below, the Court recommends that Defendants' motions to dismiss, (Dkt. ## 28, 29), be granted and that Plaintiff McGee's lawsuit be dismissed.

**I. Plaintiff McGee's Complaints**

The operative complaints across both lawsuits are McGee's amended complaint, (Dkt. #8), filed before the Court entered its consolidation order, and McGee's second amended complaint, (Dkt. #12), which was originally filed in 6:21cv222 prior to the consolidation. *See Haines v. Kerner*, 404 U.S. 519 (1972) (federal courts must construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys). An amended complaint entirely supersedes and take the place of an original complaint. *See Clark v. Tarrant Cnty.*, Tex., 798 F.2d 736, 740 (5th Cir. 1986).  McGee's succinctly outlines the facts of his case in his amended complaint, (Dkt. #12).

1

McGee explains that at all times relevant to the facts of this case, he was housed in administrative segregation at the Coffield Unit within TDCJ. On September 16, 2019, officers at the unit were conducting a "major shakedown," which McGee describes as when "all inmates will be taken out of their cells for search of contraband," (Dkt. #12, pg. 6). McGee complied with prison officials' orders to submit to hand restraints while inside his cell—placing both his arms fully extended outside of the food-slot. Multiple officers were yelling numbers and displaying hand signs. Other officers were using their hand-held radios from approximately forty yards away. *Id.* at pg. 8-9. Just as Officer McClung "secured the second restraint" on his wrist, the cell door began to open. *Id* at pg. 6. While Officer McClung was placing him in hand-restrains, McGee states that "there are officers on each side doing the same with his two neighbors." *Id.* at pg. 8. As a result, McGee asserts that his left shoulder was "pinned between the side of his slot and wall door[,] resulting in excruciating pain to his shoulder." *Id.*

Due to "chaos," McGee explains that he remained in this pinned position for approximately seven to ten seconds before the door "relieved the hold." *Id.* Lieutenant Knox and Sergeant Marshall asked what happened, to which McGee informed them and McClung stated that "the door just rolled. I didn't tell her to." *Id.* He further explains that by policy, "officers are to communicate via hand radio" during this process and that "if an officer comes to pull an inmate out of his cell and he is not equipped with a hand held radio (as they all should be) he would communicate to the pickett [sic] officer by either yelling at the top of his lungs or using hand signs to relay the number." He notes that, in the year of 2019 alone, he was aware of at least three incidents involving inmates' doors being opened—with inmates exiting their cells acting violently. *Id.* at pg. 8.

McGee requested medical attention, and he was escorted by Officer Boykin to the unit's medical department. Photographs and X-rays were taken of his bruised shoulder, which revealed that he did not suffer any broken bones as a result of the incident. McGee states that when Lieutenant Knox arrived at the medical department, she seemed "agitated" and stated that the Major made her "write a report"—and proceeded to blame him because he did not pull his arms out of the food slot fast enough. McGee explains that he was given Aspirin and an ice pack for his injury.

McGee states that he was transferred to TDCJ's Michael Unit to "participate in the Mental Health Therapeutic Program."  On March 9, 2020, he filled out a "sick-call request" for the "continued" pain in his shoulder. The provider, Defendant Ofili, ordered McGee a "double cuff pass," and recommended that he be sent to a specialist for possible ligament damage to his shoulder. McGee states that he filled out another sick-call request in July 2020 but never received a response, (Dkt. #12, pg. 7). In December 2020, he filled out another request that went unanswered. Subsequently, on January 22, 2021, he filled out an additional request concerning pain in his shoulder, but the "medical department refused to treat" him. *Id.*

McGee then submitted a Step One grievance in February 2021 concerning the medical department's failure to treat his shoulder and his lack of sleep because of the pain. Defendant Ofili prescribed McGee Loratadine on February 22, 2021—but he complains he was never given an in-person evaluation. He also asserts that he learned from an outside source that Loratadine is an allergy medication and should not be used for pain. McGee filled out two additional sick-call requests on April 6 and 16, 2021, complaining of his shoulder pain but was refused treatment.

The confusion, lack of training, and lack of supervision, McGee insists, directly contributed to his door closing, causing his injuries. McGee states that these officials were "clearly and

knowingly negligent to their duties and disregarded policies," (Dkt. #12, pg. 9). The "negligence" has significantly affected his daily activities—as he is no longer able to exercise, which he previously utilized as a "coping mechanism." *Id*. He further explains that he is unable to lift his left shoulder past eye level and remains in constant pain. He is only able to sleep on his back, which makes "comfortable sleep impossible," and has been "placed on a higher dosage of meds. for his anxiety and panic attacks." *Id*.

Defendant Townsend, as Warden, was aware of the unconstitutional policy and was "grossly negligent in failing to prevent the medical department on Michael Unit from committing an Eighth Amendment violation." He was also aware of the risk to health the policy created, and failed to take measures to guarantee McGee's safety and acted with deliberate indifference to his medical needs.

## II. Defendants' Motions to Dismiss

Defendants filed two motions to dismiss, (Dkt. ## 28, 29). Defendants first assert that they are entitled to immunity under the Eleventh Amendment for claims against them in their official capacities. Defendants further allege that McGee concedes that he failed to exhaust his required administrative remedies concerning his claims of deliberate indifference to his serious medical needs and, therefore, those claims must be dismissed. Finally, Defendants maintain that McGee failed to allege sufficient facts to demonstrating Defendants Pace, Townsend, Lane, Knox, and Lumpkins' personal involvement and that they are entitled to qualified immunity.

In the second motion to dismiss, (Dkt. #29), Defendant Horton asserts that McGee failed to allege facts showing her personal involvement in a constitutional violation and she is also entitled to qualified immunity.

4

## III. McGee's Reply

In his reply, (Dkt. #33), McGee insists that he is suing Defendants in their official capacities for injunctive relief. He also maintains that Defendants strategically allege that there "was no delay in medical treatment" in an effort to hide that there was "no medical treatment period." McGee further complains that he pleaded how he was substantially harmed.

## IV. Legal Standards

The United States Court of Appeals for the Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint is frivolous if it lacks an arguable basis in law or fact and/or the complaint is based upon an indisputable meritless legal theory. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Neitzke v. Williams*, 490 U.S. 319, 325-27 (1989). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id.* (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Texas*,

5

2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

## V. Discussion and Analysis

Defendants filed two motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). McGee filed a reply.

### 1. Exhaustion of Administrative Remedies

Defendants argue that McGee conceded in his pleadings that he failed to exhaust his administrative remedies concerning his claim of deliberate indifference to his serious medical condition after the incident that injured his shoulder.

It is well-settled that prisoners must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purpose, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. In light of *Jones v. Bock*, the Fifth Circuit provided guidance concerning how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following

procedures were outlined:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA.  When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits.  If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73.  A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only.  *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

Because the entire purpose of an administrative grievance is to give prison officials notice and an opportunity to address a problem internally, a prisoner is not necessarily required to name specific defendants in his grievances.  *See Jones*, 549 U.S. at 217 ("The PLRA requires exhaustion of such administrative remedies as are available, 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement along the lines of the Sixth Circuit's judicially created rule.") (internal citation and quotations omitted); *Patterson*, 547 F. App'x at 511 ("Nothing in the PLRA requires prisoners to identify all defendants that they later sue."); *Johnson*, 385 F.3d at 522 ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."); *see also Brown v. Sikes*, 212 F.3d 1205, 1207-10 (11th Cir. 2000) (rejecting a rule that a prisoner must always name defendants in his grievance).

TDCJ provides a two-step procedure for processing prisoner grievances.  *See Johnson*, 385 F.3d at 515-16. A TDCJ prisoner must properly complete both the Step One grievance and the Step 2 appeal grievance in order to properly and fully exhaust his required administrative remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A Texas prisoner must pursue a

grievance through both steps to satisfy the exhaustion requirement and mere substantial compliance is insufficient. *Dillon*, 596 F.3d at 268. A Texas prisoner may raise only one issue in a single grievance. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (explaining that TDCJ requires "only one issue per grievance be presented and that each issue have been filed at [the] Step One" stage) (unpublished).

Here, the docket reflects that McGee—multiple times in his pleadings—stated that he did not exhaust his administrative remedies on his claim of deliberate indifference to his medical needs. Specifically, McGee first concedes that he did not exhaust his remedies on this claim in his initial pleading, (Dkt. #1-1, pg. 7), by asserting that "Plaintiff concedes that he has not completely exhausted all available remedies as it relates to claim of indifference to serious medical need."

McGee repeats this concession his subsequent complaint, (Dkt. #12, pg. 10), and further explains that he did not file a Step Two grievance appeal. He specifically asserts that at the Coffield Unit, on September 17, 2019, he "presented the facts relating to this complaint." *Id*. On September 26, 2019, prison officials sent him a response "that allegations had been forwarded to the Office the Inspector General," to which McGee then replied with a Step Two grievance appeal on September 27, 2019. McGee attached this grievance to his initial complaint, (Dkt. #1, pg. 19). The Step Two grievance reads as follows:

> Inmates allegations were never addressed on Step 1. Inmate contends that on 9/16/19 he was injured when cell door opened while arms were out through the bean slot. Inmate was being handcuffed by Officer McClure when door opened. Inmate never claimed any contact by staff therefore that should not have been investigated. Inmate wish for an investigation as to the side wall causing injury that required X-rays and medical treatment. This injury is an ongoing problem. This is gross negligence on the behalf of the TDC staff.

(Dkt. #1, pg. 1).

Moreover, McGee further states that he filed a Step One grievance "in the early part of March 2021," (Dkt. #12, pg. 5). He explains that "approximately two weeks ago the medical

department asked for—and received—a forty-five-day extension" and that he is "anticipating a denial of grievance." *Id*. If his grievance is denied, McGee asserts, "then it could be another ninety days before the process is complete. Put simply, plaintiff is not sure he can last this long. The pain is ongoing." McGee states that he therefore requests a permanent injunction. *Id*. at pg. 6.

Both the Court and Defendants recognize that under the pleading rules, "the courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). The Court, nonetheless, can take judicial notice. *Id*. at 1018.

Here, McGee concedes through multiple assertions in his complaints that he failed to his exhaust his claims of medical deliberate-indifference. He also attached in his initial complaint what he explains is his Step Two grievance appeal submitted on September 26, 2019, in which he explains that he was injured by the door and seeks an investigation. This Step Two grievance, however, is unrelated to claims of deliberate indifference to his serious medical needs—as McGee merely states that his injury required X-rays and that the injury is an "ongoing problem." It neither addresses the failure to treat, lack of medications, or inability to sleep and therefore fails to contain sufficient detail to prison officials fair notice of his problem and an opportunity to correct it. *See Johnson v. Johnson*, 385 F.3d 503, 516-17 (5th Cir. 2004).

Even accepting true that McGee filed a Step One grievance related to this Step Two appeal, this grievance is unrelated to his claims of medical deliberate-indifference. Therefore, given this unrelated grievance coupled with McGee's concessions that he failed to "completely" exhaust "all available remedies as it relates to claim of indifference to serious medical need," it is clear from the pleadings and attachments that McGee failed to exhaust these claims and, as a result, the Court must dismiss them.

McGee's filing of a Step One grievance "in early part of March 2021" does not save these claims. The exhaustion requirement is mandatory and requires that exhaustion be completed prior to filing suit in federal court. McGee filing a Step One grievance related to his injury in March 2021—but then initiating this lawsuit in April 2021 without waiting for prison officials to respond after they received an extension—shows that he did not complete the exhaustion process prior to filing this lawsuit. McGee's assertion that "put simply, plaintiff is not sure he can last this long," confirms that he did not complete the exhaustion requirement prior to filing this lawsuit. Because McGee concedes—and the pleadings show—that he failed to exhaust these claims, all of his claims of deliberate indifference to his serious medical needs must be dismissed without prejudice. *See Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019).

### 2. Failure to Protect

McGee further contends that Defendants acted with deliberate indifference to his safety by failing to protect him when his left shoulder was injured as a result of his cell door pinning him up against a wall. However, while the incident described is unfortunate, McGee has pleaded nothing more than negligence.

The Eighth Amendment's prohibition against the imposition of cruel and unusual punishment requires prison officials to protect prisoners from violent attacks by other prisoners; however, not every injury suffered by a prisoner rises to the level of a constitutional violation. *See Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The deliberate indifference standard is very difficult to meet. *See Domino*, 239 at 756. The Supreme Court elaborated by holding that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from

11

> which the inference could be drawn that as substantial risk of serious harm exists, and he
> must also draw the inference. …
>
> But an official's failure to alleviate a significant risk which he should have perceived, but
> did not, while no cause for commendation, cannot under our cases be condemned as the
> infliction of punishment.

*Farmer*, 511 U.S. at 837-38.  The Court further explained that prison officials who have actual

knowledge of a risk of harm may not be held liable if "they responded reasonably to the risk, even

if the harm ultimately was not averted."  *Id.* at 844-45 ("[P]rison officials who act reasonably

cannot be found liable under the Cruel and Unusual Punishments Clause.").  Crucially, in order to

show that prison officials were deliberately indifferent to a prisoner's need for protection, the

prisoner must prove "that the official *actually knew* of a substantial risk of serious harm and *failed*

*to act*."  *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished)

(emphasis added).

Negligence on the part of prison officials does not rise to the level of a constitutional

violation. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Instead, a prisoner must show that prison

officials were deliberately indifferent. *Id.* "[A] prison official cannot be found liable under the

Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health

or safety; ... the official must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also*

*Bowie v. Procunier,* 808 F.2d 1142 (5th Cir. 1987).

Under an Eighth Amendment analysis, the Fifth Circuit rejected an inmate's claims of

deliberate indifference based on injuries he sustained in a fall after officials failed to repair leaks

in pipes that caused puddles of water in *Atkins v. Sheriff's Jail Avoyelles Parish*, 278 F. App'x 438

(5th Cir. 2008). The Fifth Circuit held that the actions attributed to jail officials amounted to

nothing more than "unreasonableness or negligence, neither of which establishes an Eighth

12

Amendment violation." *Id.* at 439. Here, Plaintiff does not allege that the defendants had any subjective intent to cause him harm. At most, his claims would amount to negligence. *See e.g.*, *Noble v. Grimes*, 350 F. App'x 892, 893 (5th Cir. 2009) (unpublished per curiam) (prisoner's complaint for injuries to head sustained as result of slip and fall in standing water in prison shower area amounted to negligence at most and was insufficient to raise claim of deliberate indifference to substantial risk of serious harm, even though defendants were aware of standing water and failed to take preventive action).

Likewise, in *McLaughlin v. Farries,* 122 F. App'x 692 (5th Cir. 2004) (unpublished), an inmate complained that a leaky air conditioner caused water to accumulate on the floor of his cell, and that the defendants knew about this and negligently failed to take action. The inmate slipped and fell in the water, injuring himself. The Fifth Circuit held that the inmate's claim was one of negligence, which was not actionable under section 1983. *See also Marsh v. Jones,* 53 F.3d 707, 711–12 (5th Cir. 1995) (no remedy under section 1983 for prisoner's injury sustained in a slip and fall); *Benton v. Grant,* 31 F. App'x 160 (5th Cir. 2001) (unpublished) (no remedy under section 1983 for injuries sustained in jail slip and fall or for claim that defendants knew of leak in ceiling and failed to repair it).

As in the cases above, McGee's claim is one of negligence, which does not rise to the level of a constitutional violation. Negligence is not actionable under § 1983. McGee states that he was ordered to submit to hand restraints inside his cell when the cell door abruptly closed—pinning his left shoulder against the wall for seven to ten seconds, resulting in excruciating pain. He notes that officers present asked what had happened and that one officer was irritated she was required to write an incident report about it—both of which indicate prison officials did not deliberately close the door on McGee's shoulder.

13

Moreover, he explains that there was "chaos" in the area, as officers were applying hand restraints on McGee's neighbors at the same time. McGee asserts that, despite policy, some officers were not equipped with their radios and thus had to communicate to the picket officer by yelling or using hand signs—which he states has resulted in other problems before. By asserting that the officers were without their required-radios to communicate when opening cell doors, McGee describes nothing more than negligence rather than a constitutional violation.

In other words, McGee's description of the events—an accidental closing of a cell door on his shoulder in the midst of "chaos" and "confusion"—states nothing more than negligence on the part of prison officials. McGee asserts no facts indicating that any Defendant consciously knew of and disregarded a substantial risk to his safety. Accordingly, he failed to state a claim upon which relief may be granted and these claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. Supervisory Liability and Failure to Train

McGee further asserts that certain Defendants failed to train and supervise their employees, thereby causing him harm. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The doctrine of *respondeat* does not apply in section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has held that the term supervisory liability in the context of a section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an

argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.*

A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). As mentioned, McGee has not alleged any facts showing that each Defendant was personally involved in the incident or in any constitutional violation. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694-95.

Here, while McGee asserts that prison officials failed to follow policy requiring them to have hand-held radios to communicate with one another, he does not identify a specific policy or custom that is a "moving force" of any constitutional violation. Instead, as mentioned, he describes an incident stemming from negligence.

15

4. Permanent and Preliminary Injunctions

McGee seeks both a preliminary injunction and a permanent injunction "ordering defendants to treat plaintiff for his serious medical need and discontinuing a policy of denying medical treatment under the guide of COVID-19," (Dkt. #33, pg. 2).

A party seeking a preliminary injunction must establish four elements: (1) that there is a substantial likelihood the party will prevail on the merits; (2) that a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest.  *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012).  Relief should only be granted if the party seeking relief has clearly carried the burden of persuasion as to all four elements.  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

The equitable injunctive power of federal courts will not be exercised save in exceptional cases to prevent irreparable injury which is clear and imminent.  *See Heath v. City of New Orleans*, 320 F.Supp. 545, 546 (E.D. La. 1970), *aff'd* 435 F.2d 1307 (5th Cir. 1971).  "Irreparable harm" means an injury which cannot be adequately addressed by a monetary award."  *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981).

Mere speculation or conclusory allegations of an irreparable injury is insufficient.  *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013); *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (conclusory allegations of irreparable harm do not entitled movant to injunctive relief); *Coleman v. Bank of New York Mellon*, 2013 WL 1187158 at *8 (N.D. Tex. Mar. 4, 2013) ("These unsupported, conclusory statements are insufficient to demonstrate entitlement to the extraordinary relief of a TRO and preliminary

16

injunction."); *Mitchell v. Sizemore*, 2010 WL 457145 at *3 (E.D. Tex. Feb. 5, 2010) ("His vague and conclusory allegation that he is undergoing 'a number of problems' is insufficient to show entitlement to injunctive relief.").

Finally, principles of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state or local agencies; the Supreme Court has stated that correctional administrators are to be accorded wide-ranging deference in their adoption and execution of policies and practices that, in their judgment, are needed to preserve internal order and discipline and to maintain internal security. *See Block v. Rutherford*, 468 U.S. 576, 584-85 (1984). Consequently, the Court has noted that federal district courts are not to allow themselves to become "enmeshed in the minutiae of prison operations." *Lewis v. Casey*, 518 U.S. 343, 362 (1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). In other words, federal courts do not micromanage prison operations save exceptional circumstances.

For a permanent injunction to issue, a plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)).

Here, however, McGee has not shown that he is entitled to any type of injunction. As explained above, (1) McGee concedes that he failed to exhaust his claim of deliberate indifference to his serious medical needs; and (2) his claims concerning Defendants' alleged failure to protect and failure to train/supervise fail to state a claim upon which relief may be granted. Accordingly, McGee has not shown that he will prevail on the merits of his claims. The record in this case fails

to present facts indicating, much less showing, any entitlement of the extraordinary relief of an injunction.

### 5. Qualified Immunity

Defendants are entitled to qualified immunity at the motion-to-dismiss stage unless the plaintiffs have alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct. *See Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021).

Here, as explained above, McGee failed to state a claim concerning Defendants' alleged failure to protect him, as his claim sounds in negligence.  The first prong necessarily fails. Because McGee has not satisfied the first prong, an analysis of the second is unnecessary and Defendants are entitled to qualified immunity concerning McGee's claim regarding his safety.

### RECOMMENDATION

Accordingly, it is recommended that Defendants' motions to dismiss, (Dkt. ## 28, 29), be granted. Specifically, the Court recommends Plaintiff's claim concerning Defendants' failure to protect him be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted. The Court further recommends that Plaintiff's claim concerning deliberate indifference to his serious medical needs be dismissed, without prejudice, for the failure to exhaust administrative remedies. All requests for injunctive relief should be denied.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 2nd day of August, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE